UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00133-MOC

| | |
|---|---|
| **BRIAN E. PELTIER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **GREGORY MATHIS** | ) |
| **JONATHAN SEBASTIAN** | ) |
| **A.N.D SYNDICATED PRODUCTIONS, INC.** | ) |
| **LISA BERGMAN** | ) |
| **N.B.C.,** | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the court on plaintiff's *pro se* request Complaint [hereinafter "motion"] for a Temporary Restraining Order (#3) (hereinafter "TRO"), which is supported by a separate Memorandum of Law. The court has promptly reviewed plaintiff's request for a TRO and considered not only his memorandum, but the exhibits he has annexed to his motion. For the reasons that follow, the court will deny the request for a TRO without prejudice as to considering his request for Preliminary Injunction at an appropriate time after defendants have been served and issues have joined.

I.

Applications for issuance of a TRO are procedurally governed by Rule 65(b), Federal Rules of Civil Procedure, which provides as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

-1-

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed.R.Civ.P. 65(b). In considering the issuance of TRO, the court has also considered current case law governing the issuance of such relief:

> Prior to the *Winter* [*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)] decision, in the Fourth Circuit, preliminary injunctions and temporary restraining orders were governed by the standard articulated in *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977). In *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342 (4th Cir. August 5, 2009), the Fourth Circuit concluded that the *Blackwelder* test stood in "fatal tension with the Supreme Court's 2008 decision in *Winter*." Id. at 346. In keeping with *Winter*, the Fourth Circuit found that first, a plaintiff must now show that he will "likely succeed on the merits" regardless of whether the balance of hardships weighs in his favor. *Id.* at 346. Also, the likelihood of success on the merits requires more than simply showing that "grave or serious questions are presented." *Id.* at 347. Second, the plaintiff must make a clear showing that he will likely be irreparably harmed absent preliminary relief. *Id.* That the plaintiff's harm might simply outweigh the defendant's harm is no longer sufficient. *Id.* The showing of irreparable injury is mandatory even if the plaintiff has already demonstrated a strong showing on the probability of success on the merits. *Id.* Third, the Court is admonished to give "particular regard" to the "public consequences" of any relief granted. *Id.* Finally, there no longer exists any flexible interplay between the factors, because all four elements of the test must be satisfied. *Id.*

White v. Miller, 2011 WL 1168045, 2 (D.S.C. Mar. 7, 2011).[1]

---

[1] The court notes that Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342 (4th Cir. 2009), was vacated by the Supreme Court in Real Truth About Obama, Inc. v. Federal Election Com'n, ___ U.S. ___, 130 S.Ct. 237 (April 26, 2010) for further consideration in light of Citizens United v. Federal Election Comm'n, 558 U.S___, 130 S.Ct. 876 (2010), which dealt with First Amendment issues and not the standard for considering injunctive relief.

## II.

The court has closely read the Complaint and plaintiff's brief. In essence, plaintiff asks this court to restrain defendants from airing (and perhaps, re-airing) an episode or segment of the *Judge Mathis Show* in which he participated as a "litigant." Plaintiff contends that after filing a small claim seeking money damages in the North Carolina General Court of Justice against a former girlfriend, he was solicited by the show's producers to come to Chicago and have that dispute resolved by defendant Gregory Mathis (hereinafter "Judge Mathis").

Plaintiff contends that he was tricked into going to Chicago and participating in the program inasmuch as: (1) the producers failed to disclose the terms of the binding arbitration agreement and other contracts until he arrived in Chicago; (2) after his arrival in Chicago, he was told for the first time that if he did not participate he would be responsible for his own travel costs; and (3) when he did participate in the program, Defendant Mathis failed to consider evidence and made on-the-air statements about plaintiff which were untrue and derogatory. In addition, plaintiff contends that he suffers from a number of mental, emotional, and physical illnesses which made it impossible for him to render lawful consent to either participate in the program or have his claim resolved in that forum. He contends that the defendant producers knew of such conditions from the outset. Plaintiff also takes issues with the legitimacy of the forum and the binding nature of Judge Mathis's resolution.

## III.

Review of the jurisdictional statement in the Complaint reveals that plaintiff is asserting federal question jurisdiction under the Arbitration Act and asserting supplemental jurisdiction over a claim for breach of contract arising under state law. Plaintiff may also be asserting a claim for

defamation, although the Complaint is not clear. Reading all the pleadings in a light most favorable to plaintiff at this time, plaintiff may well be contending this is the appropriate venue as he resides in this district and defendants producers allegedly contacted him in this district. While the court will leave final determination of jurisdiction for a later date as plaintiff may well have executed a forum selection clause when he agreed to participate in the show, the court determines that plaintiff has made a colorable assertion of jurisdiction sufficient to address his request for a TRO.

IV.

Reviewing petitioner's motion by applying the factors, the court concludes as follows: first, petitioner has not shown a likelihood of success on the merits; second, petitioner has not made a showing of irreparable harm; third, the balance of hardships tips neither way as the plaintiff's interests in not having the show aired are equal to defendants' commercial interests in airing its programming; and fourth, a TRO is not in the public interest because the relief sought would chill first amendment interests in airing programming.

A.

Plaintiff is not likely to prevail on the merits. As this court has discovered first hand, agreements to arbitrate are draconian and seldom favor the participant who did not draft the agreement. Further, the court also has concerns at this point as to whether a contract action attacking the arbitration agreement can proceed. Even if it can, being able to prove fraud and/or that plaintiff lacked the capacity to sign that agreement are some of the most difficult burdens of proof.

Further, assuming that plaintiff drafted the Complaint and the supporting memorandum, it appears that he is not only well educated, but he is capable of expressing his thoughts in a cogent

and logical manner. While the court has given close consideration to the medical records, which indicate that plaintiff suffers from a number of ailments, simply being diagnosed or treated for an illness does not render one legally incompetent. What is missing from the evidence submitted is any indication that plaintiff has been adjudged by the State of North Carolina as incompetent to handle his own affairs or that he is incompetent.

B.

Turning next to irreparable harm, plaintiff makes a strong argument that if the show or segment airs, it will portray him in a false light and damage his reputation. This court is familiar with and takes note of the afternoon television programming, which typically panders to its audience by portraying program participants as rubes, liars, and cheats. Long gone are the days of genteel afternoon programming involving cooking and light interviews with interesting people. To the extent plaintiff may be able to show actionable damage, such damage is not "irreparable" as money damages would be available as a properly instructed jury could determine the monetary value of any such damage. Thus, plaintiff has not persuaded this court that he will suffer irreparable harm.

C.

Third, the balance of the hardships does not tip in plaintiff's favor and is, as best neutral. While plaintiff may well suffer through the humiliation of having the show air, the prior restraint plaintiff seeks in having this court halt a national television broadcast would certainly place a hardship on the defendants which could be equally untenable. If it later turns out that such material is libelous or was obtained in violation of law, it is the broadcaster that will stand to answer in

court. Restraining the dissemination of a broadcast is, therefore, a substantial hardship. This factor is, therefore, neutral.

D.

Fourth, a TRO is not in the public interest for many of the same reasons the third factor does not tip in plaintiff's favor. If this court were to restrain broadcast of such segment, it would have a chilling effect on program producers and broadcasters inasmuch as it would subject their work product to prior review by a judicial officer. The public would not be well served by such a system and is better served where a program producer or broadcaster creates product and makes its own decision on whether that material should air, taking into consideration that they may be hauled into court to defend their decision.

V.

Finally, the court can find no reason to conduct a hearing or require a response by defendants before considering plaintiff's request for a TRO as the pleadings before the court, while well done by this litigant, provide no basis for affording the injunctive relief sought at this time. Having been unable to satisfy any of the four factors, the request for a TRO is denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for a **TRO (#3)** is **DENIED** without prejudice as to considering his request for a preliminary junction at a later time.

Signed: July 9, 2015

Max O. Cogburn Jr.
United States District Judge